# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2598

ICON PSG 1 FL, LLC

v.

JENKINS COURT REALTY CO., L.P.,
Appellant

---

Appeal from
United States District Court, Eastern District of Pennsylvania
Judge Gerald A. McHugh
No. 2:25-cv-00044

Before: Porter, Matey, and Ambro, *Circuit Judges*
Submitted Jun. 5, 2026; Decided Jul. 16, 2026

---

NONPRECEDENTIAL OPINION[1]

AMBRO, *Circuit Judge*

This appeal arises from a commercial mortgage foreclosure action in which

Defendant-Appellant Jenkins Court Realty Co., L.P. ("Jenkins Court") failed to make

required monthly payments on a $20.5 million commercial loan from Plaintiff-Appellee

ICON PSG 1 FL, LLC ("ICON"). After Jenkins Court failed to respond timely to the

complaint, the District Court denied its motion to set aside the entry of default and issued

a default judgment against the company for the outstanding debt. The Court also

permitted the modification of a lease that benefited one of Jenkins Court's affiliates and

---

[1] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

held Jenkins Court and its principal in contempt for repeated noncompliance with court orders. Jenkins Court appeals each of those rulings.

The District Court did not abuse its discretion by refusing to set aside the default or by finding contempt, and it did not err in permitting the modification of the lease. Therefore, we affirm the District Court's orders in full.

**I.**

In September 2023, ICON issued a $20.5 million commercial loan to Jenkins Court to refinance existing debt and fund construction projects related to a property in Jenkintown, Pennsylvania. The loan agreement required Jenkins Court to make monthly payments. After a five-day grace period, failure to make the monthly payment would result in default.

Jenkins Court was repeatedly late on its monthly payments and failed entirely to make the payments due on November 1, 2024, December 1, 2024, and January 1, 2025. In December 2024, ICON issued an acceleration notice demanding immediate payment of the unpaid principal, interest, fees, and expenses. The notice asserted that, after crediting about $1.49 million in undisbursed construction funds, Jenkins Court owed more than $20.4 million.

In January 2025, ICON initiated this mortgage foreclosure action in the District Court and moved for the expedited appointment of a receiver. Jenkins Court opposed the motion, contending that ICON had improperly withheld construction advances required by the parties' agreements and that ICON's conduct contributed to Jenkins Court's financial difficulties.

2

In February 2025, the District Court granted ICON's motion and appointed Trigild IVL, LLC as Receiver, authorizing it to take control of the property and all revenues. The Receivership Order further directed Jenkins Court to provide a "detailed accounting of all income, expenses, receivables, and payables relating to the Property" within thirty days. S. App. 4.

Although it opposed ICON's motion, Jenkins Court did not file a timely answer, request an extension, or otherwise respond to the complaint. Therefore, the Clerk of Court entered Jenkins Court's default in March 2025. Later that same day, Jenkins Court moved to set aside the default and sought permission to file a proposed answer. It asserted that its principal, Philip Pulley, had been hospitalized for six weeks and undergone multiple surgeries, rendering him unable to assist counsel in preparing an answer. In its proposed answer, Jenkins Court asserted several affirmative defenses based on ICON's alleged breaches of the loan agreement.

The District Court denied Jenkins Court's motion in May 2025. It concluded that Jenkins Court did not establish good cause for failing to answer the complaint and did not assert a meritorious defense sufficient to justify setting aside the default.

Meanwhile, in April 2025, the Receiver moved to compel compliance with the Receivership Order, asserting that Jenkins Court had failed to provide the required accounting. The District Court granted the motion, directing Jenkins Court to provide the accounting and certain documentation. The order "cautioned [Jenkins Court] that failure to comply [would] be grounds for potential sanctions for contempt." App. 749.

3

In June 2025, the Receiver moved to hold Jenkins Court and Pulley in contempt of the order, alleging that the company had provided nothing more than a general ledger in response. Jenkins Court claimed it did not have access to documents predating 2022 due to flood damage.

The Receiver also sought modification of certain lease provisions affecting Jenkins Court affiliates. Specifically, the Receiver asked the Court to replace a lease term giving certain tenants 1000 days to cure payment defaults with an industry-standard term giving them 10 days. Jenkins Court opposed the motion, arguing that the Receiver lacked authority to modify the leases unilaterally without providing tenants notice and an opportunity to respond. It relied on subordination, non-disturbance, and attornment provisions executed in connection with the loan transaction, which required any lender or successor that acquired the landlord's interest to remain bound by the leases.

In July 2025, the District Court granted (1) ICON's request for default judgment against Jenkins Court for the full amount due, which had increased to $22,056,659.26, (2) the Receiver's motion to modify the lease with respect to SBG Management, a tenant, and (3) the Receiver's motion for contempt in part, concluding that Jenkins Court had failed to comply with prior Court orders directing it to provide an accounting and transfer records. Jenkins Court appeals those orders.

**II.**

The District Court had jurisdiction under 28 U.S.C. § 1332. We exercise appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and its legal conclusions *de novo*. *Freeman v. Pittsburgh Glass Works, LLC*,

709 F.3d 240, 251 (3d Cir. 2013). We review for abuse of discretion the denial of a motion to set aside default, the entry of default judgment, and the finding of contempt. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73–74 (3d Cir. 1987); *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 551 (3d Cir. 2003).

**III.**

On appeal, Jenkins Court contends that the District Court (1) abused its discretion by refusing to set aside default and entering default judgment, (2) erred in allowing modification of the SBG Management lease, and (3) abused its discretion in finding Jenkins Court and Pulley in contempt. None of these issues warrants reversal.

**A. The District Court did not abuse its discretion by refusing to set aside default and entering a default judgment against Jenkins Court.**

When a defendant seeks to set aside an entry of default for good cause under Federal Rule of Civil Procedure 55(c) or a default judgment under Rule 60(b)(1), courts in the Third Circuit consider four factors: (1) prejudice to the plaintiff, (2) whether the defendant has a meritorious defense, (3) the excusable or culpable nature of the defendant's conduct, and (4) the effectiveness of alternative sanctions. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 256–57 (3d Cir. 2008) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)); *Emcasco Ins.*, 834 F.2d at 73. A meritorious defense must be supported by "specific facts beyond simple denials or conclusionary statements" that, if proven at trial, constitute a complete defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

Jenkins Court argues that it raised a meritorious defense in its proposed answer to the complaint, where it asserted that ICON breached the parties' agreements by failing to approve tenants, interfering with leasing and construction activities, failing to fund construction work, failing to approve sales of the property, and failing to timely fund loan draws. But the proposed answer offered no factual allegations beyond those conclusory assertions, much less "specific facts." *See id.* Additionally, the loan agreement required Jenkins Court to provide a notice of breach before claiming a lender default. The proposed answer did not allege that Jenkins Court had done so. Therefore, the District Court did not abuse its discretion by concluding that Jenkins Court's defense was not meritorious and refusing to vacate the default.

Likewise, the District Court did not abuse its discretion by entering a default judgment against Jenkins Court in the amount of $22,056,659.26, reflecting the outstanding loan balance and accrued interest. Jenkins Court argues that the Court should have reduced the judgment by rents paid to the Receiver. However, the Court explicitly deferred that issue in its order, which provided that "[a]ny credits or offsets shall be appropriate for resolution at a later stage of this litigation." App. 6. Given that the receivership is still ongoing, the Court reasonably refused to offset the judgment amount at this point.

Accordingly, the District Court's refusal to set aside default and its entry of default judgment were each a proper exercise of discretion.

**B. The District Court did not err in permitting the modification of the SBG Management lease.**

Jenkins Court argues the District Court committed four errors regarding the SBG Management lease: (1) determining the bargain was not at arm's length, (2) not enforcing the attornment provision against the Receiver, (3) modifying the lease without a legal basis to do so, and (4) modifying it without notice to the tenant.

The District Court correctly determined that the lease was not bargained for at arm's length. Pennsylvania law characterizes an "arm's length transaction" as one "untainted by any collusion or fraud," *Tech One Assocs. v. Bd. of Prop. Assessment, Appeals, & Rev. of Allegheny Cnty.*, 53 A.3d 685, 703 n.30 (Pa. 2012). The contract contained a 1000-day cure term, which the Court reasonably found to be unconscionable because it provided the tenant with an extraordinarily favorable remedy that diverged from the commercial standard. It further found that Pulley, who is also principal and president of SBG Management, breached the duty of good faith and fair dealing by signing the lease as both landlord and tenant. It would be difficult to argue that the lease's drafting did not involve collusion, given the lopsided term and Pulley's self-dealing. Therefore, under Pennsylvania law, it cannot have been bargained for at arm's length.

Jenkins Court also cannot rely on the attornment provision, because it does not apply to the Receiver. The provision triggers when a lender or its successor acquires the landlord's interest through foreclosure. But a court-appointed receiver acts as an officer of the court and does not derive its authority from being a successor to the interests of

7

parties. *See Trinh v. Fineman*, 9 F.4th 235, 238–39 (3d Cir. 2021) (recognizing that a receiver derives authority from the appointing court).

Finally, the Receivership Order expressly authorized the Receiver to "make, cancel, enforce, or modify" leases relating to the property. S. App. 5. And there was no clear error in the District Court's finding that notice to Pulley, a party to the litigation, sufficed for notice to SBG Management, given that he was also its principal.

Accordingly, the District Court reasonably allowed the Receiver to modify the SBG Management lease.

## C. The District Court did not abuse its discretion by holding Jenkins Court and Pulley in contempt.

Jenkins Court argues that either (1) it substantially complied with the District Court's orders compelling it to produce documents or (2) compliance was impossible because it did not have the information requested. This issue turns on the credibility of Pulley's assertions about what documents he did or did not have, and the record does not indicate the District Court erred in its determination.

The District Court noted that Jenkins Court provided no explanation for why it failed to produce documents created *after* a 2022 flood that allegedly damaged its records. It also found Pulley, who had been convicted of voter fraud,[2] to be an "evasive witness who offered no credible explanation for how the property could have been operated if in fact the documents requested by the Receiver did not exist." App. 2.

---

[2] The District Court was entitled to consider Pulley's felony history as part of its credibility determination. *See* Fed. R. Evid. 609(a)(2).

Further, the District Court observed that "the tone and tenor of his testimony was that the Receiver should have been able to obtain necessary information from what was produced," an accentuation that "strongly implie[d] he [was] being selective in his compliance" with the Court's order. App. 2–3. We defer to this credibility assessment, which the District Court made after observing Pulley's live testimony and was reasonable in light of the record. *See Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143, 156–57 (3d Cir. 2010) ("To the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential.").

Therefore, the District Court properly exercised its discretion by holding Jenkins Court and Pulley in contempt.

\* \* \* \* \*

For the reasons above, we affirm.